UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOHN DUNBAR,<br>    Plaintiff | :<br>:<br>: |
| v. | :    C.A. No. |
| PROVIDENCE COLLEGE,<br>    Defendant | :<br>:<br>: |

# COMPLAINT

## I. Introduction

This is an action brought by the Plaintiff against Defendant seeking compensatory and punitive damages, as well as attorneys' fees, litigation expenses and other equitable relief, to remedy the unlawful conduct the Plaintiff suffered in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000e, *et seq.*, the Rhode Island Fair Employment Practices Act ("FEPA"), R.I.G.L. §28-5-1, *et seq.* and the Rhode Island Civil Rights Act of 1990 ("RICRA"), R.I.G.L. §42-112-1, *et seq.*

## II. Parties

1. The Plaintiff is a resident of the City of Providence, County of Providence, State of Rhode Island.

2. Defendant is a Rhode Island non-profit corporation with a principal place of business located at 1 Cunningham Square, Providence, Rhode Island 02918.

## III. Jurisdiction

3. This Court has jurisdiction over the Plaintiff's claims under Title VII pursuant to 42 U.S.C. §2000e-5(f)(3) and supplemental jurisdiction over the Plaintiff's claims under the FEPA and the RICRA pursuant to 28 U.S.C. §1367.

## IV. Venue

4. Venue is proper in this Court insofar as a substantial portion of the events or omissions giving rise to the within claim occurred in Rhode Island in compliance with the requirements set forth in 28 U.S.C. §1391.

## V. Exhaustion of Administrative Remedies

5. On or about April 26, 2022, the Plaintiff timely co-filed a charge of discrimination against the Defendant with the Rhode Island Commission for Human Rights ("RICHR") and the United States Equal Employment Opportunity Commission ("EEOC").

6. Thereafter, more than one hundred twenty (120) days, but less than two (2) years after the charge was filed, the Plaintiff requested that the RICHR issue a right to sue letter.

7. On March 28, 2024, the Plaintiff was issued a notice of right to sue by the RICHR and has timely instituted suit thereon.

8. On April 2, 2024, the Plaintiff was issued a notice of right to sue by the EEOC and has timely instituted suit thereon.

## VI. Material Facts

9. The Plaintiff is African-American.

10. The Plaintiff was hired by Defendant as a Public Safety Officer, in 1991. Thereafter, the Plaintiff received several promotions and is currently the second highest ranking officer in Defendant's Public Safety Department.

11. During all relevant time periods, the Plaintiff's work performance was satisfactory and met Defendant's legitimate expectations.

12. While employed with Defendant, the Defendant's employees and/or agents subjected the Plaintiff to workplace discrimination on the basis of his race and color and retaliated against him for complaining about his discriminatory work environment.

13. On May 27, 2015, the Plaintiff sent a lengthy email to Major Jack Leyden, the former Director of Public Safety and Chief at Defendant, raising concerns he had with Deputy Chief Eric Croce and his racially discriminative acts. Mr. Croce served as the Plaintiff's direct supervisor at the time.

14. In 2015, Defendant hired an outside firm, Margolis Healy, to conduct an external review of Defendant's Public Safety Department. At the end of its review, Margolis Healy made several recommendations, including, but not limited to, promoting the Plaintiff from Sergeant to Lieutenant as well as serving as Defendant's Community Relations and Crime Prevention officer. Major Jack became upset about Margolis Healy's recommendations, especially as to the Plaintiff's promotion.

15. In 2017, the Plaintiff was formally promoted to Lieutenant. At this time, several of the Plaintiff's coworkers expressed their beliefs to him that he was only promoted due to his race. For example, Sergeant Jarvis verbally harassed the Plaintiff by accusing him of starting a rumor that he supposedly spit in the Plaintiff's face.

16. In February, 2017, the Plaintiff oversaw dispatchers and implemented a "powerphone" program for dispatchers. However, in the spring of 2018, during a meeting with Koren Kanadanian, at the time, Interim Chief of Defendant's Public Safety Department, the Plaintiff's supervisory duties were revoked.

17. Also in February, 2017, the Plaintiff was assigned to investigate Title IX and VI incidents. However, in September, 2018, Interim Chief Kanadanian revoked this assignment from the Plaintiff.

18. In fall, 2018, Defendant held a solidarity walk on campus. One of the Plaintiff's responsibilities as Campus Relations Officer was to attend this solidarity walk. However, Major Leyden instructed the Plaintiff not to attend the walk.

19. On January 9, 2019, the Plaintiff sent Interim Chief Kanadanian an e-mail explaining how "unhappy" he was with the "lack of training and support" that he had received from Defendant's Public Safety Department since his promotion.

20. On April 8, 2019, the Plaintiff sent Fr. Kenneth Sicard, O.P., Executive Vice President/Treasurer, an e-mail outlining his concerns with Interim Chief Kanadanian's candidacy for the Chief of Public Safety Department position. In fact, the Plaintiff stated that he had "serious concerns of racism within the department" that Interim Chief Kanadanian had not addressed these concerns, but rather, reinforced a racist culture within Defendant's Public Safety Department.

21. On April 11, 2019, Fr. Sicard responded to the Plaintiff's e-mail. Fr. Sicard stated that the decision to promote Interim Chief Kanadanian to Chief was finalized and Defendant would be moving forward with the decision.

22. In August, 2019, the Plaintiff attended training and was appointed as Defendant's Internal Affairs Investigator. However, in December, 2020, Deputy Chief Eric Croce revoked the Plaintiff's Internal Affairs Investigator duties.

23. In November, 2019, the Plaintiff took a medical leave of absence due to the stress and anxiety caused from the discriminatory work environment at Defendant. In March, 2020, the Plaintiff returned to work from his medical leave of absence.

24. In the summer of 2020, the Plaintiff reported to his superiors that a group of students were using social media to spread awareness about their negative encounters with Defendant's Public Safety Department. In the students' social media posts, they used the hashtag,

"#BlackatPC." After the Plaintiff called attention to the social media posts, there was an uproar throughout the Public Safety Department. In fact, Chief Kanadanian told the Plaintiff that he could no longer post on Defendant's Public Safety Department's social media accounts.

25. Also during the summer of 2020, Lieutenant David Marshall approached the Plaintiff and told him that his 2005 complaint against him for making a racist remark had been removed from his file.

26. In September, 2020, Chief Kanadanian racially-profiled a Latino individual, which led to his sixty (60) day suspension. Shortly after his sixty (60) day suspension, Chief Kanadanian resigned from his employment at Defendant.

27. On October 12, 2020, the Plaintiff was called to respond to a situation where a student was acting erratically. The Plaintiff was the first African-American officer to arrive at the scene. When he arrived, and several times throughout the encounter, the student called him a "n***er." During this encounter, the student also bit a Caucasian Public Safety Officer, who reported to the scene. The Plaintiff recorded the entire encounter on his cell phone and sent the video recording to Deputy Chief Croce. After watching the video recording, Deputy Chief Croce failed and/or refused to comment on the student's language towards the Plaintiff. Rather, Deputy Chief Croce was concerned with the Caucasian officer's injury.

28. On October 19, 2020, the Plaintiff forwarded Kathy Alvino, Executive Director of Defendant's Human Resource Department, his May 17, 2015 e-mail to Major Leyden and explained that he was once again having issues with Deputy Chief Croce.

29. Shortly thereafter, on October 19, 2020, the Plaintiff forwarded Wendy McRea-Owoeye, Assistant Director of Human Resources, the aforementioned e-mail so that Ms. McRea-Owoeye and the Plaintiff could discuss his concerns via a telephone call.

30. On October 28, 2020, the Plaintiff sent Ms. McRae-Owoeye an e-mail stating, "I would like to speak to only you at this time if possible. I respectfully request to speak with you regarding issues I have with my direct supervisor."

31. On November 10, 2020, the Plaintiff met with Ms. McRae-Owoeye and Malin Marin-Bean, a Human Resources employee, via Zoom, to discuss the racially hostile work environment. The Plaintiff also reported that he was the only Public Safety Officer to not have a personal printer. All Caucasian Public Safety supervisors had a personal printer. Ms. McRae-Owoeye and Ms. Marin-Bean failed and/or refused to gather information related to his claims. Rather, they questioned why he had been video-taping the supervisor office in PC's Public Safety Department.

32. On November 10, 2020, Defendant's IT Department emailed the Plaintiff and told him that his broken printer would cost too much to repair and that a replacement printer was under $300.00. However, Chief Kanadanian replied, "DO NOT REPLACE." Therefore, the Plaintiff remained the only supervisor in Defendant's Public Safety Department to not have a personal printer at his desk.

33. In November, 2020, the Plaintiff commenced a medical leave of absence due to the stress and anxiety caused by the discriminatory work environment at Defendant. In March, 2021, the Plaintiff returned to work from the medical leave of absence.

34. On March 21, 2021, Deputy Chief Eric Croce approached the Plaintiff and stated that the Chief requested an investigation into him for not answering radio calls twice during the Plaintiff's March 20th overnight shift.

35. On March 23, 2021, Deputy Chief Croce travelled out of state. At this time, Deputy Chief Croce unofficially demoted the Plaintiff within the chain-of-command. In fact, Deputy

Chief Croce appointed Lieutenant Marshall, a junior Public Safety Officer, in charge of the Public Safety Department. Deputy Chief Croce also sent his travel itinerary to Lieutenant Marshall and other Public Safety supervisors, as well as Ann Manchester-Molak, Vice President at Defendant. Everyone in receipt of Deputy Chief Croce's itinerary knew that the Plaintiff was listed as number two (2) in command instead of number one (1).

36. On March 24, 2021, Deputy Chief Croce sent the Plaintiff, Ann Manchester-Molak, Vice President at Defendant, and Dr. Steve Sears, Vice President of Student Affairs at Defendant, an email regarding a public safety initiative he wanted the Plaintiff to work on. However, Deputy Chief Croce should not have sent this e-mail to Ms. Manchester-Molak and Dr. Sears because it did not concern them. In addition, Deputy Chief Croce wanted the Plaintiff to complete this project within a week of his March 24th email, which was short notice for the Plaintiff to address same.

37. On April 16, 2021, Deputy Chief Croce called the Plaintiff into his office to discuss an error he made on his overtime sheet. During this meeting, Deputy Chief Croce expressed disbelief with the Plaintiff's story that his overtime error was a mistake. He also accused the Plaintiff of committing fraud and told him that he could be arrested. The following week, Deputy Chief Croce yelled at another Public Safety Officer for making an error on his overtime sheet but did not threaten him with arrest.

38. On May 21, 2021, the Plaintiff sent Deputy Chief Croce an e-mail outlining his concerns regarding the discriminatory work environment at Defendant.

39. On May 27, 2021, Deputy Chief Croce responded to the Plaintiff's aforementioned e-mail asking him to meet in person the following week.

40. On June 9, 2021, the Plaintiff sent Deputy Chief Croce an e-mail in response to the discussion regarding his May 21st e-mail. In the e-mail, the Plaintiff stated, "When you

approached me on Commencement Day regarding my concerns, you appeared very angry and agitated… Your demeanor and your remarks made me nervous and concerned…I felt very uncomfortable during our brief discussion." The Plaintiff also requested to meet with a different Defendant representative, besides Deputy Chief Croce, to discuss his concerns.

41. On September 20, 2021, during a weekly review meeting, Deputy Chief Croce met with the Plaintiff and other Department employees. During the meeting, Deputy Chief Croce reviewed incidents from the previous weekend, including an incident involving a student calling an African-American Providence Police Officer the "n-word." During the meeting, Deputy Chief Croce actually used the derogatory term by stating, "The student called the officer a n***er bitch." The Plaintiff was shocked that the word in his presence. The Providence police report regarding this incident described the word as the "n-word."

42. On January 6, 2022, the Plaintiff shared concerns with Jacqueline Peterson, an Advisor to the Defendant's President as to Institutional Diversity, Equity & Inclusion, that Deputy Chief Croce was regularly hiring Caucasian employees within the Public Safety Department. The Plaintiff is the only African-American male in the Department.

43. The Plaintiff has been ostracized based on the foregoing information and ousted from the chain of command. In fact, lower ranking officers in Defendant's Public Safety Department, who are required to report to the Plaintiff, ignore him and perform duties that are outside of their job requirements. In addition, the Plaintiff's job responsibilities of investigating off-campus incidents have also been eliminated. The Plaintiff has also been excluded from participating in campus events that he is normally involved with, such as Early Admitted Students Day and Commencement.

44. On four (4) separate occasions the Plaintiff has been racially profiled, harassed and/or refused entry onto Defendant's campus by the same Caucasian officer.

45. The discrimination and harassment the Plaintiff has experienced is due to his race and color and is offensive, severe and/or pervasive and has deprived him of the right to work in a non-discriminatory work environment.

46. Defendant has retaliated against the Plaintiff for complaining about his discriminatory work environment.

47. As a proximate result of Defendant's acts and/or omissions, including, but not limited to, those described herein, the Plaintiff has suffered and will continue to suffer equitable damages, compensatory damages, including, but not limited to, emotional distress, loss of enjoyment of life, humiliation, damage to his business and personal reputation and other great harm, as a result of being discriminated against due to race, color, ethnicity and/or national origin.

### VII.   Claims for Relief

48. The Plaintiff incorporates the allegations contained in ¶¶1 through 47 above in the counts set forth below.

### Count One
### Unlawful Discrimination—42 U.S.C. §2000e, *et seq.*

49. Defendant, by its acts and/or omissions, including, but not limited to, those described herein, constitute unlawful discrimination against the Plaintiff in employment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2, *et seq.*, causing the Plaintiff to suffer damages as aforesaid, and thereby deprived the Plaintiff of rights secured under Title VII.

### Count Two
### Unlawful Discrimination—R.I.G.L. §28-5-1, *et seq.*

50. Defendant, by its acts and/or omissions, including, but not limited to, those described herein, constitute unlawful discrimination against the Plaintiff in employment and retaliation in violation of the Rhode Island Fair Employment Practices Act, R.I.G.L. §28-5-1, *et seq*., causing the Plaintiff to suffer damages as aforesaid, and thereby deprived the Plaintiff of rights secured under the FEPA.

### Count Three
### Violation of RICRA, R.I.G.L. §42-112-1, *et seq*.

51. Defendant, by its acts and/or omissions, including, but not limited to, those described herein, constitute unlawful employment discrimination against the Plaintiff and retaliation in violation of the Rhode Island Civil Rights Act of 1990, causing the Plaintiff to suffer damages as aforesaid, and thereby deprived the Plaintiff of rights secured under the Rhode Island Civil Rights Act of 1990.

### VIII.   Prayers for Relief

**WHEREFORE**, the Plaintiff prays that this Honorable Court grant the following relief:

1. a declaratory judgment that Defendant, in the manner described herein, unlawfully discriminated against the Plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2, *et seq*., the Rhode Island Fair Employment Practices Act, R.I.G.L. §28-5-1, *et seq*. and the Rhode Island Civil Rights Act of 1990, R.I.G.L. §42-112-1, *et seq*.;

2. enjoining and permanently restraining Defendant from violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2, *et seq*., the Rhode Island Fair Employment Practices Act, R.I.G.L. §28-5-1, *et seq*. and the Rhode Island Civil Rights Act of 1990, R.I.G.L. §42-112-1, *et seq*.;

3. award the Plaintiff back pay, including incremental increases, plus prejudgment interest thereon;

4. award the Plaintiff compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, plus prejudgment interest thereon;

5. award the Plaintiff punitive damages;

6. award the Plaintiff reasonable attorney's fees and costs of litigation; and,

7. such other and further relief as the Court deems just and proper.

## IX. Demand for Jury Trial

The Plaintiff hereby demands a trial by jury on all counts so triable.

## X. Designation of Trial Counsel

The Plaintiff hereby designates V. Edward Formisano, Esquire as trial counsel.

PLAINTIFF,
By his attorneys,
**FORMISANO & COMPANY, P.C.**

Dated: June 26, 2024

/s/ V. Edward Formisano
V. Edward Formisano (#5512)
100 Midway Place, Suite 1
Cranston, RI 02920-5707
(401) 944-9691
(401) 944-9695 (facsimile)
edf@formisanoandcompany.com

## CERTIFICATION

I hereby certify that the within document has been electronically filed with the Court on this 26th day of June, 2024 and is available for viewing and downloading from the ECF system.

/s/ V. Edward Formisano

11